Miscellaneous Docket No. 20-115

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Eastern District of Texas
No. 5:19-cv-00036-RWS, Hon. Robert W. Schroeder, III

## APPLE INC.'S PETITION FOR REHEARING EN BANC

Luann L. Simmons
O'MELVENY & MYERS LLP
Two Embarcadero Center,
28th Floor
San Francisco, CA 94111

Xin-Yi Zhou
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071

Melanie L. Bostwick
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Jeffrey T. Quilici
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
300 W. 6th Street, Suite 1850
Austin, TX 78701

*Counsel for Petitioner*

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

In re Apple Inc.     **v.** _____

Case No. 20-115

### CERTIFICATE OF INTEREST

Counsel for the:

■ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

Apple Inc.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Apple Inc. | Apple Inc. | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

Gilliam & Smith, LLP: Melissa R. Smith, Bobby Lamb, Andrew Thompson (Tom) Gorham
O'Melveny & Myers LLP: Laura Bayne Gore, Bo Kyoung Moon, Brett J. Williamson, Marc J. Pensabene
Walker Stevens Cannom Yang LLP: Bethany M. Stevens, Hannah Lynn Cannom

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

None

5/22/2020

Date

Please Note: All questions must be answered

cc: _____

/s/ Melanie L. Bostwick

Signature of counsel

Melanie L. Bostwick

Printed name of counsel

Reset Fields

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. iv

STATEMENT OF COUNSEL ................................................................ 1

INTRODUCTION ................................................................................. 2

BACKGROUND .................................................................................. 3

ARGUMENT ....................................................................................... 8

    I.    The Panel's Order Disregarded Precedent Requiring Enforcement of the Forum-Selection Clause. ......................... 8

    II.   The Panel's Order Also Silently Granted District Courts Unprecedented Authority. ....................................... 13

    III.  Analyzed Properly, the Forum-Selection Clause Here Mandates Transfer. ............................................................. 19

CONCLUSION ................................................................................... 21

CERTIFICATE OF COMPLIANCE

ADDENDUM

EXHIBIT A

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
 571 U.S. 49 (2013) ...................................................... 2, 8, 9, 19

*EVS Codec Techs., LLC v. LG Elecs., Inc.*,
 No. 2:18-CV-00343-JRG, 2019 WL 2904747 (E.D. Tex.
 July 5, 2019) ................................................................ 5, 16

*In re Fortinet, Inc.*,
 No. 2020-120, 2020 WL 2095893 (Fed. Cir. May 1, 2020) ................. 12

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
 651 F.3d 1355 (Fed. Cir. 2011) ........................... 2, 5, 9, 14, 15

*Implicit, LLC v. Imperva, Inc.*,
 No. 2:19-cv-00040-JRG-RSP, slip. op. (E.D. Tex. Apr. 22,
 2020) ............................................................................ 15

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) ........................................................ 18

*Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*,
 28 F.3d 600, 603 (7th Cir. 1994) ................................ 18

*Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*,
 No. 2:17-CV-00671-JRG, 2018 WL 8014281 (E.D. Tex.
 Sept. 5, 2018) ............................................................. 16

*Uniloc USA, Inc. v. Cisco Sys., Inc.*,
 6:15-CV-1175-JRG, 2017 WL 959856 (E.D. Tex. Mar. 13,
 2017) ........................................................................... 16

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ........................................ 8

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ........................................ 8

**Statutes**

28 U.S.C. § 1404(a) ................................................................. 5, 8, 12, 14

**Rules**

Fed. R. Civ. P. 56 ......................................................................... 14

# STATEMENT OF COUNSEL

Based on my professional judgment, I believe that the panel decision in this appeal conflicts with the Supreme Court's decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013), and this Court's decision in *General Protecht Group, Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355 (Fed. Cir. 2011). En banc consideration of this appeal therefore is necessary to secure or maintain uniformity of this Court's decisions.

In addition, this appeal requires an answer to at least the following precedent-setting question of exceptional importance: whether a district court addressing a transfer motion may decide the merits of a contractual defense before enforcing the contract's forum-selection clause dedicating the issue to another forum.

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

1

# INTRODUCTION

Controlling Supreme Court precedent requires a district court to honor a forum-selection clause and transfer a case to the parties' agreed forum unless "extraordinary circumstances unrelated to the convenience of the parties" dictate otherwise. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 (2013). The threshold for invoking a forum-selection clause is extremely low: a party need show only a "non-frivolous dispute regarding the scope" of the agreement containing the clause. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011).

Here, Apple plainly made that showing. But rather than follow these precedents and transfer the case, the district court indulged in a lengthy analysis of the underlying contract issues (likely applying the wrong state's contract law); incorrectly—and definitively—concluded that the contract did not apply to the present dispute; and then denied transfer.

A divided panel of this Court tacitly endorsed this improper analysis and affirmed the outcome. The panel majority enabled this end-run on contract law without acknowledging the standards

articulated in *General Protecht* and *Atlantic Marine* or explaining how the district court's analysis comported with them.  As a result, en banc review is necessary to ensure that this Court's precedents, and those of the Supreme Court, are respected.

En banc review is also necessary because the panel's ruling endorsed a novel power for district courts: while nominally evaluating only transfer, the district court fully analyzed and effectively granted summary judgment on Apple's underlying contractual defense.  As the dissenting judge aptly explained, that merits issue was relegated to another forum by contract.  Allowing the majority's decision to stand will undermine fundamental expectations of countless contracting parties.  Resolution of this question of exceptional importance therefore requires the full Court's attention.

The Court should grant rehearing.

## BACKGROUND

Maxell's claims of willful infringement are barred by an express provision of a controlling contract, which also gives the Northern District of California the exclusive responsibility to hear any challenges to that bar.

3

In mid-2013, Hitachi employee Shigemi Iwasaki approached Apple to discuss "an intellectual property transaction" concerning a portfolio of patents.  Pet. 6.[1]  Hitachi and Apple signed an agreement in 2011 (the "2011 Agreement") to protect the confidentiality of such discussions.  Pet. 5; Appx217-222.  The 2011 Agreement specifically precludes the use of the parties' communications to support allegations of willful infringement.  Pet. 5.  It also includes a choice-of-law provision selecting California law and a forum-selection clause giving "exclusive jurisdiction and venue" over disputes to the Northern District of California.  Pet. 5-6.

In 2019, Plaintiff Maxell, Ltd., a Japanese corporation that was part of the Hitachi corporate family at the time of the 2011 Agreement, sued Apple, alleging infringement of ten patents, four of which Mr. Iwasaki allegedly discussed with Apple in 2013.  Pet. 3-6.  And, despite the controlling provisions in the 2011 Agreement, Maxell included claims of willful infringement based on the 2013 discussions between Apple and Mr. Iwasaki.  Pet. 6.

---

[1] "Pet." refers to Apple's mandamus petition, Dkt. No. 3; "Opp." to Maxell's corrected response, Dkt. No. 31; and "Reply" to Dkt. No. 25.

Apple moved to transfer the case under 28 U.S.C. § 1404(a).

Apple carefully showed how the 2011 Agreement and its forum-selection

clause covered the 2013 discussions on which Maxell relied, and that

the resolution of those claims and defenses was therefore reserved for

the Northern District of California.[2]  Pet. 9-10; Appx56-57.  It also

explained this Court's standard that such a forum-selection clause

controls whenever "the nexus between the case and the agreement at

issue is 'non-frivolous.'"  Appx57; *EVS Codec Techs., LLC v. LG Elecs.,*

*Inc.*, No. 2:18-CV-00343-JRG, 2019 WL 2904747, at *2 (E.D. Tex. July

5, 2019) (quoting *Gen. Protecht*, 651 F.3d at 1359).

Maxell opposed.  Though it recognized that an applicable forum-

selection clause mandates transfer in all but exceptional cases, Maxell

insisted that the 2011 Agreement and its forum-selection clause did not

apply to its claims.  Pet. 11.  In support, it offered four pages of

argument involving detailed contractual interpretations of specific

clauses and terms in the 2011 Agreement, without acknowledging that

---

[2] Separately, Apple argued that transfer was warranted even under a
traditional analysis of the forum non conveniens factors because the
litigation as a whole was strongly connected to the Northern District of
California, and entirely disconnected from the Eastern District of
Texas.  Pet. 6-9, 27-42; Appx57-65.

the 2011 Agreement reserves this interpretive task for courts in California.  Appx250-251; Appx327-328.

The district court at least acknowledged this Court's "non-frivolous nexus" standard, *see* Appx5-6, but immediately misapplied it. Rather than recognizing that any deep interpretation of the 2011 Agreement, if required, should be done by the *California* court, the district court accepted Maxell's improper invitation to dive in itself.  It devoted nearly six pages to examining and construing the terms of the 2011 Agreement, determining whether those terms applied to Hitachi's and Apple's discussions in 2013, and questioning whether the 2011 Agreement bound Maxell.  Appx4-10.  Despite the agreement's choice-of-law clause requiring California law, the district court apparently applied Texas law.  *See* Dissent 7.  After all that analysis, it finally concluded that the 2013 discussions were not covered by the 2011 Agreement, effectively deciding the merits of any contractual defense that Apple might have pleaded to respond to Maxell's willful-infringement claims.  Pet. 14-15.

Apple petitioned this Court for mandamus.  It based its principal argument on the district court's flawed applications of *General Protecht*

6

and *Atlantic Marine*.  Pet. 20-21.  It also pointed out the irony of both Maxell and the district court spending pages and pages interpreting the 2011 Agreement while simultaneously insisting that any argument that the 2011 Agreement applies to this dispute would be frivolous.  Pet. 22-24.

Nevertheless, a divided panel denied the writ.  But the majority did not grapple with any of the flaws in the district court's opinion.  Neither did it explain how to square the district court's lengthy analysis of the 2011 Agreement with *Atlantic Marine* or *General Protecht*.  In fact, it said nothing about the proper mode of analysis, nothing about which state's law should apply, and nothing about why Maxell's arguments or the district court's conclusions were correct.  Instead, in a mere three sentences, the majority accepted the district court's conclusion that the 2011 Agreement does not cover the discussions on which Maxell bases its willful-infringement claims.  Op. 2.

By contrast, Judge Newman in dissent faithfully applied the "bedrock rule concerning forum selection clauses" articulated in *Atlantic Marine*: "when the parties choose the forum for resolution of any future dispute involving the Agreement, that choice must be respected."

7

Dissent 6. She noted that the majority and the district court instead "analyze the facts and confidentiality situation consigned to California, decide their merits, apparently under Texas law, and upon this decision, they reject the [forum] selection clause in the agreement they are interpreting. That is as improper as it is illogical." Dissent 7. Judge Newman also explained in detail why precedent as well as logic require that the parties' free contractual selection of a forum and controlling law must supersede statutory convenience considerations. Dissent 8-9.

## ARGUMENT

### I.    The Panel's Order Disregarded Precedent Requiring Enforcement of the Forum-Selection Clause.

In an ordinary case, a court resolves a § 1404(a) transfer request using the well-established public- and private-interest factors established by the Supreme Court and explicated for Fifth Circuit cases in *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") and *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). But when a forum-selection clause is implicated, "[t]he calculus changes." *Atl. Marine*, 571 U.S. at 63. Rather than turning on the convenience of parties and witnesses or the

8

vested interests of the fora, the transfer decision turns on the parties' agreement to submit their dispute to a mutually agreed court. As a result, transfer is warranted except under "extraordinary circumstances." *Id*. at 62; *see also* Dissent 7 (parties' choice of forum "is given controlling weight"). Even the burden of proof shifts; the *plaintiff* must show that the contractual forum is improper, and it may invoke only public-interest factors to do so. *Atl. Marine*, 571 U.S. at 63-64.

Moreover, the threshold for invoking a forum-selection clause is extremely low. "[A] party seeking to enforce a forum selection clause in the context of a [contractual] defense" need not "first establish, conclusively, that it would win the [contractual] defense." *Gen. Protecht*, 651 F.3d at 1359. Rather, an agreement's forum-selection clause governs any "non-frivolous dispute regarding the scope" of that agreement. *Id*. It could hardly be otherwise. The purpose of a forum-selection clause, after all, is to ensure that any but the most contrived or transparently meritless dispute about the agreement is resolved in the parties' selected forum. Enforcing such terms, "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63.

Yet the panel majority sharply departed from those controlling precedents, and reached a result that should be precluded. The majority worked this violence on well-understood contracting principles in just three sentences, only one of which addresses the parties' arguments:

> We cannot say that the district court clearly abused its discretion in concluding that the forum selection clause did not compel transfer here. No party contends that the prior agreement controls the outcome of this case or has asserted a breach of contract claim originating from that agreement. Notably, the express purpose of the agreement in question was the protection of confidential information related to a proposed sale of some of the asserted patents between the former patent owner and Apple, which the district court reasonably concluded was not the same as the licensing discussions at the center of this suit.

Op. 2.

At the threshold, the majority's characterization of both the applicable test and Apple's position are inaccurate. The 2011 Agreement need not "control the outcome of the case" for its forum-selection clause to apply. *See* Pet. 20-21. And in any event, Apple has maintained throughout this case that the 2011 Agreement "controls the outcome" of the willful infringement counts that Maxell brought based on discussions between Apple and Hitachi in 2013. *See, e.g.*, Pet. 24-27;

10

Appx57.  Neither is the lack of a breach of contract claim material to
the analysis; at the time Apple moved to transfer, its motions to dismiss
were pending and it had not yet answered Maxell's complaint.  Appx31;
Appx33; Appx38.  And once the district court improperly and summarily
rejected application of the 2011 Agreement on the merits in its transfer
order, *see infra* 13-19, it would likely have found any formal
counterclaim for breach of that contract to be futile (at best).

Even more troubling, the majority's reasoning silently discards
the principles established in *Atlantic Marine* and *General Protecht*.  The
opinion cites neither case and doesn't mention, much less articulate,
their controlling rules of decision.  Indeed, it cites nothing at all in its
brief treatment of the forum-selection clause issue.

Yet those rules do control the outcome.  As no one disputes,
Maxell's willful infringement claims rely on notice allegedly provided in
the 2013 discussions between Apple and Hitachi.  Pet. 6; Dissent 9 n.*.
Apple has demonstrated that the 2011 Agreement expressly bars the
use of those discussions as evidence of willful infringement, and that
any challenge Maxell brings to that conclusion is for the Northern
District of California to decide.  Pet. 5-6; Appx219-220.  Under *Atlantic*

*Marine*, the forum-selection clause in that agreement must be given controlling force.[3]  But the district court did not enforce it.  And the majority not only gave no reason why *Atlantic Marine* should not dictate the outcome, it never acknowledged that any explanation was required.

By the same token, the majority's brief treatment improperly eviscerated the "non-frivolous nexus" standard articulated in *General Protecht*.  Maxell entirely ignored the standard in its opposition to Apple's transfer request.  *See* Appx244-268 (neither citing *Gen. Protecht* nor suggesting that the nexus was frivolous).  Instead, as Apple has repeatedly noted, Maxell went straight to the merits, offering a detailed contractual analysis to challenge Apple's argument that the 2011 Agreement covers the 2013 discussions.  Appx250-252.  The district court likewise devoted six pages of its opinion to contractual analysis

---

[3] This Court's recent decision in *In re Fortinet, Inc.*, No. 2020-120, 2020 WL 2095893 (Fed. Cir. May 1, 2020), is not to the contrary.  *Fortinet* analyzed "whether courts are precluded from considering the availability of the alternative forum" in a forum non conveniens analysis.  *Id.* at *2.  This Court distinguished *Atlantic Marine* because it applied § 1404(a) rather than forum non conveniens standards.  *Id.*

before rejecting Apple's position. Pet. 24-27; Appx4-10. A truly frivolous argument would not require such extensive analysis to reject.

Finally, the panel majority did not even identify which state's contract law it (and the district court) applied in conducting their analyses. Parties routinely negotiate for choice-of-law provisions that dictate the state-law rules of interpreting their contracts. The 2011 Agreement is no exception; as noted above, it expressly provided for interpretation under California law. The district court never examined the potentially crucial differences between California and Texas law that parties routinely negotiate to avoid. Dissent 7-8.

Because the panel's reasoning and result conflict with Supreme Court and this Court's precedent, en banc consideration is warranted to preserve the uniformity of this Court's decisions.

## II. The Panel's Order Also Silently Granted District Courts Unprecedented Authority.

En banc review is also warranted to protect the policy behind forum-selection clauses. As Judge Newman correctly observed, the panel's decision was "as improper as it is illogical" because it tacitly endorsed a further power grab on the part of the district court. Dissent 7. In the guise of deciding the transfer motion, the district court went

13

far beyond its assigned role; it "analyze[d] the facts and confidentiality situation consigned to California, decide[d] their merits, apparently under Texas law, and upon this decision … reject[ed] the [forum] selection clause in the agreement [it was] interpreting." Dissent 7. In effect, the district court summarily adjudicated Apple's contractual defense to Maxell's claims of willful infringement, knocking it entirely out of the case without adhering to the standards established under Fed. R. Civ. P. 56.

But nothing authorizes a district court to resolve a party's contractual defense in the context of a § 1404(a) motion to transfer, as this Court has made abundantly clear. Requiring "a party seeking to enforce a forum selection clause in the context of a [contractual] defense" to "first establish, conclusively, that it would win the [contractual] defense" renders that forum-selection clause "meaningless because if the defense should fail, then the merits would have been litigated in a forum other than that which was bargained for; and if the defense should succeed, there would likely be nothing left to litigate once the case arrives in the proper forum." *Gen. Protecht*, 651 F.3d at 1359. Put simply, any "non-frivolous dispute regarding the scope" of an

14

agreement that contains a forum-selection clause should be decided in the agreed transferee forum. *Id.* And once a defendant identifies such a non-frivolous argument for application of a forum-selection clause, the transferor district court must stop and transfer the case to the forum the parties selected to hear such disputes. *Id.*

Trial courts considering transfer motions—including other district courts in the Eastern District of Texas—have followed this Court's guidance and stopped well short of a full airing and resolution of contractual defenses assigned to the transferee forum. For example, in *Implicit, LLC v. Imperva, Inc.*, the district court noted that it would "exceed its authority" if it resolved defendants' licensing defenses after detecting a "non-frivolous argument" that the license and its forum-selection clause applied. No. 2:19-cv-00040-JRG-RSP, slip. op. at 7-8, 10-11 (E.D. Tex. Apr. 22, 2020).[4] For that reason, the court carefully noted that its analysis of the parties' contract was "only intended to resolve the transfer motions at issue" and "not intended to conclusively resolve any issues related to the [defendants'] licensing defenses." *Id.* at 2 n.2. Other courts in the Eastern District of Texas have repeatedly

---

[4] The *Implicit* decision is attached hereto as Ex. A.

recognized that where "resolving the parties' dispute will necessarily require the Court to interpret the [relevant] Agreement," a forum-selection clause "reserves" that interpretation for courts in the transferee forum. *EVS Codec*, 2019 WL 2904747, at *2-4; *see also Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*, No. 2:17-CV-00671-JRG, 2018 WL 8014281, at *3-4 (E.D. Tex. Sept. 5, 2018); *Uniloc USA, Inc. v. Cisco Sys., Inc.*, 6:15-CV-1175-JRG, 2017 WL 959856, at *4 (E.D. Tex. Mar. 13, 2017) ("The resolution of this dispute, however, should not be made by this Court.").

But the district court here failed to heed the low threshold for transfer under a forum-selection clause established by this Court's precedent. And, as noted above, the panel majority not only failed to enforce the *General Protecht* standard but failed to even note its existence. Instead it apparently accepted, without meaningful (or substantive) discussion, both Maxell's invitation to interpret the 2011 Agreement in full and its argument that the 2011 Agreement covered only discussions of patent sales. Op. 2 ("[T]he district court reasonably concluded [such sales discussions were] not the same as the licensing discussions at the center of this suit."). This bare assertion allowed the

district court to usurp the contract-interpretation role assigned to the
Northern District of California by the parties, and to fully resolve
Apple's contractual defense to Maxell's willful infringement claims. *See*
Dissent 9 n.\* ("[A]lthough these matters of interpretation and
application of the agreement are consigned to the California forum, my
colleagues decide them here, on motion papers, and decide not to permit
decision under California law in a federal or state court located in
California. This cannot have been the parties' intention when they
entered into this contract.").

Granting such novel authority to the district court will
significantly impair contracting parties' ability to structure their
commercial dealings. Respect for the parties' choice of law and choice of
forum is a "bedrock rule" forming a "foundation of commercial activity."
Dissent 6, 8. Indeed, parties routinely bargain for the specific state law
they expect to be applied to a dispute by the specific court that they
select, whether for the parties' convenience, the court's experience with
the laws in question, or other reasons. Dissent 8 ("There is a long and
uncontroversial history of the rights of commercial parties to agree on
the forum and law to apply should dispute arise. Surely a party to such

agreement can expect that this choice will be respected.").  But when

courts ignore these choices, drafters can no longer ensure their

agreements will be interpreted as intended, or even that they are

valid—state contract laws vary widely enough that crucial provisions

that might be upheld in one state may be unenforceable in another.

Worse, disregarding valid forum-selection clauses raises the specter

that parties may sign venue agreements they have no intention of

honoring, then dodge those commitments through artful pleading.  *See,*

*e.g.*, *Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600, 603

(7th Cir. 1994) ("The dominant policy in contract cases is enforcing the

parties' agreement, the better to promote commerce.  American firms

can hardly expect to do international business if American courts

permit them to welch on their commitments to their trading partners."

(citations omitted) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 9 (1972))).

    Because the panel's decision injects fundamental uncertainty over

how these basic clauses of contracts will be interpreted and enforced,

party autonomy is the casualty.  That can only inflate transaction costs

and throw sand into the gears of our economy.  This silent decision of a

question of exceptional importance will undermine fundamental tenets

of private commercial contracting.  En banc consideration is warranted.

### III.  Analyzed Properly, the Forum-Selection Clause Here Mandates Transfer.

As Apple demonstrated in its Petition, its contractual defense

easily surmounts the low bar for application of the forum-selection

clause in the 2011 Agreement because Maxell's basis for four of its

willful infringement claims directly implicates the agreement.  Pet. 21.

Maxell based its claims on notice allegedly provided to Apple during

discussions in 2013 with the same Hitachi manager who signed the

2011 Agreement.  Pet. 21.  But the Agreement expressly prohibits the

use of those discussions as evidence of willful infringement.  Pet. 21;

Appx219.  Thus, Maxell's own claim provides a direct link to the 2011

Agreement and its forum-selection clause that subjects disputes to

"exclusive jurisdiction and venue" in the Northern District of California.

Pet. 21-22; *see Atl. Marine*, 571 U.S. at 62.

Maxell's own arguments in opposition to this conclusion illustrate

that the connection between this case and the 2011 Agreement is far

from frivolous.  Pet. 22.  The district court's analysis does likewise.

Among other things, the district court analyzed the definitions of

"Confidential Information" and "Assertion Material"; construed the
scope of Section 3 and its evidentiary exclusion; and then applied those
conclusions to the 2013 discussions. Pet. 23-24. This extensive analysis
and application of the terms of the 2011 Agreement vividly
demonstrates the patently non-frivolous connection between this
dispute and that agreement. *See* Dissent 9 n.* ("'[Maxell] invites this
court to interpret the agreement's preamble, construe defined terms,
delve into the meaning of the parties' communications; evaluate the
scope of the disclosure prohibition; and ultimately summarily dispose of
Apple's contractual defense against Maxell's willfulness claims.'"
(quoting Reply 4.))

And though that much is enough to decide this case—the district
court should never have actually *decided* these substantial contract
interpretation questions—closer inspection also shows that the district
court's substantive interpretation of the contract is equally flawed. As
Apple explained, the district court apparently relied on provisions
allowing Hitachi to disclose its own confidential information rather
than, as it should have, the provisions barring evidentiary use of
communications between the parties, and the court separately

concluded that the 2013 discussions fell under an exception to the disclosure provisions.  Yet the express text of the 2011 Agreement belies both conclusions.  Pet. 24-27.

Nevertheless, neither the district court, nor this Court, should have delved so deeply into the interpretation of the 2011 Agreement. That task is reserved for the Northern District of California by the parties' agreement.  The panel's conclusion to the contrary cannot stand.

## CONCLUSION

The Court should grant en banc rehearing.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

| | |
|---|---|
| Luann L. Simmons | Melanie L. Bostwick |
| O'MELVENY & MYERS LLP | ORRICK, HERRINGTON & |
| Two Embarcadero Center, |  SUTCLIFFE LLP |
| 28th Floor | 1152 15th Street NW |
| San Francisco, CA 94111 | Washington, DC 20005 |
| | (202) 339-8400 |
| Xin-Yi Zhou | |
| O'MELVENY & MYERS LLP | Jeffrey T. Quilici |
| 400 S. Hope Street | ORRICK, HERRINGTON & |
| Los Angeles, CA 90071 |  SUTCLIFFE LLP |
| | 300 W. 6th Street, Suite 1850 |
| | Austin, TX 78701 |

*Counsel for Petitioner*

May 22, 2020

## CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this petition contains 3826 words, excluding the parts of the petition exempted by Fed. Cir. R. 35(c)(2).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# ADDENDUM

*Order in In re Apple Inc.*, No. 20-115 (Fed. Cir. April 22, 2020)

NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**In re:  APPLE INC.,**
*Petitioner*

---

2020-115

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 5:19-cv-00036-RWS, Judge Robert Schroeder, III.

---

**ON PETITION**

---

SEALED ORDER FILED:  April 22, 2020
PUBLIC ORDER FILED:  May 5, 2020*

---

Before PROST, *Chief Judge*, NEWMAN and HUGHES, *Circuit Judges.*

Dissent filed by *Circuit Judge* NEWMAN.

PER CURIAM.

**O R D E R**

---

\*    This order originally was filed under seal and has been unsealed in full.

Apple Inc. petitions for a writ of mandamus asking this court to direct the United States District Court for the Eastern District of Texas to transfer this case to the Northern District of California. Maxell, Ltd. opposes.

Applying law of the United States Court of Appeals for the Fifth Circuit in cases arising from district courts in that circuit, this court has held that mandamus may be used to correct a patently erroneous denial of transfer. That standard is an exacting one, requiring the petitioner to establish that the district court's decision amounted to a failure to meaningfully consider the merits of the transfer motion. *See, e.g., In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc). We are unable to say here that Apple has met that standard.

We cannot say that the district court clearly abused its discretion in concluding that the forum selection clause did not compel transfer here. No party contends that the prior agreement controls the outcome of this case or has asserted a breach of contract claim originating from that agreement. Notably, the express purpose of the agreement in question was the protection of confidential information related to a proposed sale of some of the asserted patents between the former patent owner and Apple, which the district court reasonably concluded was not the same as the licensing discussions at the center of this suit.

We also see no error that is mandamus-worthy in the district court's conclusion that the traditional transfer factors did not clearly weigh in favor of transfer. The district court reasonably considered that it had gained "some familiarity with the Asserted Patents and the accused technologies" based on the district court judge's experience in "prior cases involving Maxell and the Asserted Patents,"

IN RE: APPLE INC.                                            3

which could not be said for the transferee forum. The court
also found meaningful connections between this case and
the Eastern District of Texas, including (a) Maxell's affili-
ate having sources of proof in that district; (b) the fact that
Maxell's agent and representative for licensing negotia-
tions with Apple concerning some of the patents resides in
the Eastern District of Texas, making trial more conven-
ient in that district with regard to his testimony; and
(c) several third-party entities located in the district that
may have relevant documents and witnesses that were
within the subpoena power of the district court.

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

April 22, 2020                    /s/ Peter R. Marksteiner
Date                             Peter R. Marksteiner
                                 Clerk of Court

s35

NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

————————————

**In re:  APPLE INC.,**
*Petitioner*

————————————

2020-115

————————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 5:19-cv-00036-RWS, Judge Robert Schroeder, III.

————————————

NEWMAN, *Circuit Judge*, dissenting.

This patent infringement suit against Apple, Inc. was filed by Maxell, Ltd., a subsidiary of Hitachi, Ltd., in the United States District Court for the Eastern District of Texas.  Various issues are described as requiring  determination of rights and obligations governed by an agreement made in 2011 between Apple and Hitachi.  That Agreement contains the following clause:

> (d) This Agreement shall be construed and controlled by the laws of the State of California, irrespective of choice of law revisions and the parties further consent to exclusive jurisdiction and venue in the federal courts sitting in Santa Clara County, California, unless no federal subject matter jurisdiction exists, in which case the parties consent to the exclusive jurisdiction and venue in the Superior Court of Santa Clara County, California.  The

parties waive all defenses of lack of personal juris-
diction and *forum non conveniens* with respect to
these jurisdictions.

2011 Agreement at 4.  The Texas district court describes
the question of the relation between the 2011 Agreement
and a June 25, 2013 letter sent to Apple:

> Maxell asserts that Apple willfully infringed the
> Asserted Patents based on [a] June 25, 2013 letter
> Hitachi sent to Apple.  Apple contends that the
> 2013 letter was protected by the Confidentiality
> Agreement.  To Apple, by relying on the 2013 letter
> as notice of infringement, "there is a dispute be-
> tween Apple and Maxell relating to the applicabil-
> ity of the 2011 agreement to the 2013 letter[, and
> t]his dispute should be resolved in NDCA under the
> 2011 agreement's forum-selection and choice-of-
> law clauses."

Dist. Ct. Order at 6 (alteration in original).  The Texas dis-
trict court analyzed the 2011 Agreement and applying it to
this case.  The district court states:

> [T]he Confidentiality Agreement establishes that a
> party may disclose its own information as it
> chooses, including Assertion Material, but a Re-
> ceiving Party generally may not disclose the other
> party's information, except for Assertion Material
> asserted by the other party against it.
>
> Confidential Information is limited to "any non-
> public information consistent with the Purpose
> above that a party to this Agreement ('Disclosing
> Party') designates as being confidential to the party
> that receives such information ('Receiving
> Party') . . . ." *Id.*  The Agreement goes on to estab-
> lish that the Disclosing Party controls the disclo-
> sure and designation of information as
> Confidential Information.  *See, e.g.*, *Id.* at 3–4

(placing all "Obligations Regarding Confidential Information" on the Receiving Party). Finally, the Confidentiality Agreement establishes that "[a]ll Confidential Information is and shall remain the property of the original owners. . . . Disclosing Party reserves without prejudice the ability to protect its rights under any such patents, copyrights, trademarks, or trade secrets unless as expressly provided herein." *Id.* at 4–5. Thus, whether or not the 2013 letter is Assertion Material, the Disclosing Party and its successor (Hitachi and Maxell, respectively) is free to disclose the letter as it sees fit, including to support willful infringement claims.

Dist. Ct. Order at 8–9 (second alteration in original).

The Texas district court, in analyzing and interpreting the 2011 Agreement, does not purport to apply California law, although the 2011 Agreement states that "the Agreement shall be construed and controlled by the laws of the State of California." *See supra.* And the 2011 Agreement explicitly requires that exclusive jurisdiction is in the "federal courts sitting in Santa Clara County, California" or if there is no federal cause of action, then in "the Superior Court of Santa Clara County, California." *Id.*

The bedrock rule concerning forum selection clauses is that when the parties choose the forum for resolution of any future dispute involving the Agreement, that choice must be respected. Although we see transfer motions on the ground of *forum non conveniens*, I recall none where a choice of forum was challenged. The Supreme Court has well recognized the distinction between the agreed choice of forum, and the vagaries of *forum non conveniens*. The Court has summarized:

In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must

evaluate both the convenience of the parties and
various public-interest considerations.

* * *

The calculus changes, however, when the parties'
contract contains a valid forum-selection clause,
which "represents the parties' agreement as to the
most proper forum." *Stewart*, 487 U.S., at 31, 108
S. Ct. 2239. The "enforcement of valid forum-selec-
tion clauses, bargained for by the parties, protects
their legitimate expectations and furthers vital in-
terests of the justice system." *Id.*, at 33, 108 S. Ct.
2239 (Kennedy, J., concurring).  For that reason,
and because the overarching consideration under
§ 1404(a) is whether a transfer would promote "the
interest of justice," "a valid forum-selection clause
is  given controlling weight in all but the most ex-
ceptional cases." *Id.*, at 33, 108 S. Ct. 2239.

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist.
of Texas*, 571 U.S. 49, 62–63 (2013).

Despite the importance of the parties' choice of forum,
and the Court's recognition that this choice is given con-
trolling weight, my colleagues decline to respect the forum
selected by the parties for these issues.  Instead, the dis-
trict court and now my colleagues analyze the facts and
confidentiality situation consigned to California, decide
their merits, apparently under Texas law, and upon this
decision, they reject the form selection clause in the agree-
ment they are interpreting.  That is as improper as it is
illogical.

In purporting to decide whether to respect the parties'
contractual selection of forum for issues involved in the
contract, my colleagues decide the merits of those issues,
and then announce that the merits will not be decided un-
der the terms to which the parties agreed at the time of
contracting, that is, under California law in a federal or

state court located in California.  Issues of disclosure and confidentiality are matters of state law.  The merits of these contested and complex factual issues require trial, not adverse decision on brief motion papers.  Nonetheless, by agreement of the parties, these merits are consigned to California law in a federal or state court located in California.

For state law issues such as the laws of confidentiality and commerce, the choice of law may be critical.  There is a long and uncontroversial history of the rights of commercial parties to agree on the forum and law to apply should dispute arise.  Surely a party to such agreement can expect that this choice will be respected.

My colleagues err in ruling that this selection of California law, and a federal or state court located in California does not apply because there are additional issues in the case.  Although Maxell apparently successfully shifted the issue to one of *forum non conveniens,* the laws of contracts and the rules of commerce require respect for the Agreement that these parties made in 2011.  *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) ("The dominant policy in contract cases is enforcing the parties' agreement, the better to promote commerce." (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 1972)).

The proper approach, when it appears that issues related to the 2011 Agreement are relevant to this dispute, is to respect the choice-of-law and forum-selection clauses.  It is not disputed that California law applies to the information and confidentiality issues that we are told are likely to require resolution.  The parties' agreement to a federal or state court located in California must be respected as a matter of contract law, and as a foundation of commercial activity supported by reliable judicial process.

The integrity of contracts is the foundation of commerce.  Here the contract is between two competent

commercial entities, Apple and Maxell's parent Hitachi. There is no representation of any impropriety in the 2011 Agreement.* The judicial obligation is to enforce such contracts. From my colleagues' denial of the petition for transfer, I respectfully dissent.

---

\* It is not disputed that four of Maxell's claims of willful infringement are based on "notice allegedly provided to Apple during discussions in 2013" and subject to the 2011 Agreement. Apple Reply at 3. My colleagues agree with Apple that "Apple invites this court to interpret the agreement's preamble, construe defined terms, delve into the meaning of the parties' communications; evaluate the scope of the disclosure prohibition; and ultimately summarily dispose of Apple's contractual defense against Maxell's willfulness claims." *Id*. at 4. However, although these matters of interpretation and application of the agreement are consigned to the California forum, my colleagues decide them here, on motion papers, and decide not to permit decision under California law in a federal or state court located in California. This cannot have been the parties' intention when they entered into this contract.

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff,* | § § | Case No. 2:19-cv-00040-JRG-RSP |
| v. | § | LEAD CASE |
| IMPERVA, INC., | § § | |
| JUNIPER NETWORKS, INC., | § § § | Case No. 2:19-cv-00037-JRG-RSP CONSOLIDATED CASE |
| FORTINET, INC., | § § | Case No. 2:19-cv-00039-JRG-RSP CONSOLIDATED CASE |
| *Defendants.* | § § | |

## <u>ORDER</u>

Before the Court are two Motions: (1) Defendant Juniper Networks, Inc.'s ("Juniper") Supplemental Motion to Transfer Venue to the District of Delaware (Dkt. No. 164); and (2) Defendant Fortinet, Inc.'s ("Fortinet") Supplemental Motion to Transfer Venue to the District of Delaware (Dkt. No. 185).[1] In both of these Motions, Juniper and Fortinet argue that the vast majority of their accused products utilize Intel chips for an accused functionality, that Intel has a license with Implicit that includes a forum selection clause, that Juniper and Fortinet are third-party beneficiaries of that license, and that Juniper and Fortinet are entitled to assert the forum selection clause. Dkt. Nos. 164 & 185.

After consideration, the Court concludes that movants have made a sufficient showing that the vast majority (but not all) of Juniper and Fortinet's accused products utilize Intel chips, that Juniper and Fortinet are third-party beneficiaries of the Intel license, making the forum selection

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Order refer to the page numbers of the original documents rather than the page numbers assigned by the CM/ECF system unless otherwise indicated.

clause applicable.[2] The forum selection clause does not apply for some portion of this case, but the portion of the case that is covered by a forum selection clause is much larger. While Implicit argues that the case can be severed to retain a portion of the case that is not covered by a forum selection clause, counsel was not able, at the hearing, to identify which accused products do not contain Intel chips performing accused functionalities. Thus, the Court concludes that severance is not workable here. Furthermore, dividing this case up into two separate cases based on accused products that are and are not covered by a forum selection clause and based on asserted claims that are and are not covered by a forum selection clause would increase the complexity of this case unnecessarily and lead to numerous situations where different courts would perform duplicative and possibly conflicting work. The Court therefore concludes that the entire cases against Fortinet and Juniper should be resolved in one place. Because the forum selection clause applies to the vast majority of this case, that place should be the District of Delaware. Consequently, the Court **GRANTS** both Juniper's Motion (Dkt. No. 164) and Fortinet's Motion (Dkt. No. 185) and transfers all claims against Juniper and Fortinet to the District of Delaware.

## I.    APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses;

---

[2] All statements made by the Court are only intended to resolve the transfer motions at issue here. These statements are not intended to conclusively resolve any issues related to the licensing defenses raised by Juniper and Fortinet.

(2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflict of law. *Id*. This list is "not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* at 314–15.

A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion to transfer, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g., Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *Gen. Protecth Grp*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense

becomes "non-frivolous." *Zix*, 2016 WL 7042221 at \*3. The Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum" and that it is probably "found nearer the one-quarter marker." *Id*.

If the Court finds that the parties' dispute triggers a valid forum selection clause, then the Court "should ordinarily transfer the case to the forum specified in that clause [unless there are] . . . extraordinary circumstances unrelated to the convenience of the parties" that disfavor transfer. *Atl. Marine*, 571 U.S. at 62. "[T]his requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id*. at 63. "First, the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Second, the Court "should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id*. at 64. The Court should also assess these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *accord In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Finally, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

The Fifth Circuit and other courts have also provided guidance on situations where a forum selection clause covered some portion of a case but not others. In the *In re Rolls Royce Corp.* case, the Fifth Circuit addressed the situation where a forum selection clause applied for some parties but not others. 775 F.3d 671, 679 (5th Cir. 2014). The Court clarified how the forum selection clause affected the analysis under § 1404:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who

> have *not* signed a forum selection agreement as it would under a
> Rule 21 severance and section 1404 transfer analysis.

*Id*. at 681 (emphasis in original). The Fifth Circuit stated that "[a] properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, implicating concerns attending parallel lawsuits not present in *Atlantic Marine*." *Id*. at 679. The court also stated that "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id*. The Fifth Circuit noted that "[a] district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors" and that, in the context where a forum selection clause applies to only part of a case:

> [T]he court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issue to be litigated in two cases. That being the situation here, the district court should not have severed the claims if there were any alternative.

*Id*. at 680–81 (citing *Liaw Su Teng v. Skaarup Shipping Corporation*, 743 F.2d 1140 (5th Cir. 1984), *overruled on other grounds*, *In re Air Crash Disaster Near New Orleans, La*. on July 9, 1982, 821 F.2d 1147 (5th Cir. 1987)). Notably, the Fifth Circuit ultimately concluded that the district court improperly chose to retain the whole case despite an applicable forum selection clause and granted a petition for writ of mandamus. *Id*. at 683.

## II.    ANALYSIS

### a.    The forum selection clause applies here and covers a significant portion of this case.

The Court concludes that the forum selection clause covers a significant portion of the case. It is important to note that Plaintiff disputes the license defense as to the accused products

containing Intel chips, making interpretation of the license necessary. The Court concludes that the forum selection clause applies through the following analysis: (1) Juniper and Fortinet are both third-party beneficiaries to the Intel license; (2) as third-party beneficiaries to the license, Juniper and Fortinet are entitled to assert the forum selection clause; and (3) the Intel license covers claims of infringement to the extent that an Intel processor is used to satisfy any claim limitations for infringement, and Juniper and Fortinet have sufficiently shown a non-frivolous nexus between the Intel agreement and the majority of the claims.

### i. Juniper and Fortinet are both third-party beneficiaries to the Intel license.

Juniper and Fortinet have both shown that they are third-party beneficiaries to the Intel License.[3] Juniper and Fortinet argue that they constitute third party beneficiaries under § 6.2, which provides for a covenant not to sue Intel's customers. *E.g*., Dkt. No. 164 at 2 (citing Dkt. No. 164-2 at § 6.2). That section does not place any temporal limitation on the covenant not to sue Intel's customers—the covenant applies to past, present, and future claims against Intel's customers. However, that section does not explicitly call out these customers as "third-party beneficiaries."

Section 7.1.1 provides some language on releases, and it expressly calls out certain parties as "third-party beneficiaries." Dkt. No. 164-2 at § 7.1.1. Juniper and Fortinet do not argue that they constitute third party beneficiaries pursuant to § 7.1.1 because this section requires that the party be a customer before the effective date of the Intel License, which was September 30, 2009. *Id*. at 1; *see* Dkt. No. 164; Dkt. No. 185. Implicit argues that this section "defines the scope of third-party beneficiaries in the Release (§ 7.1.1)."

---

[3] The Court will speak about the Intel License (Dkt. No. 164-2) as generically as possible to avoid the need to seal any portion of this Order.

The Intel License provides that Delaware law applies (Dkt. No. 164-2 at § 12.11), and both parties argued that Delaware law applies. Thus, the Court will apply Delaware law in determining whether Juniper and Fortinet have shown that they are third-party beneficiaries to the Intel license. Under Delaware law, "[a] contract creates an intended beneficiary where: '(1) the contracting parties intended that the third party would benefit from the contract, (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation to the third party, and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract.'" *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017) (citing *Gerstley v. Mayer*, Case No. N12C-10-126 EMD, 2015 WL 756981, at *7 (Del. Super. Feb. 11, 2015); *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, Case No. CIV.A. 18094, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

A forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous," *Gen. Protech Grp*, 651 F.3d at 1359, and this Court has used a less than one-half and nearer to the one-quarter standard when addressing the non-frivolousness threshold regarding forum selection clauses under § 1404(a), *see Zix*, 2016 WL 7042221 at *3.

Applying Delaware law, the Court concludes that Juniper and Fortinet have easily shown that they have a non-frivolous argument that they are third-party beneficiaries. The Court concludes that, for the purposes of resolving this Motion, Juniper and Fortinet have both shown that they fall within the scope of § 6.2. This section reveals that "the contracting parties intended that the third party would benefit from the contract" and it also provides strong evidence that "intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract." Dkt. No. 164-2 at § 6.2. The parties did not raise any substantial argument did not satisfy the second prong—that the benefits provided are intended to be a gift or in satisfaction of a pre-

existing obligation to the third party—and the Court concludes that this requirement has been sat-
isfied here for the purposes of resolving these Motions.

While § 7.1.1 expressly calls out certain parties as being third-party beneficiaries, that sec-
tion does not state that other parties may not be third-party beneficiaries. Implicit argues that,
because § 7.1.1 expressly calls out certain parties as being third-party beneficiaries, a negative
implication should be implied that no other parties may be third-party beneficiaries. Dkt. No. 182
at 2 (citing *Fortis Advisors LLC v. Medicines Co., & Melinta Therapeutics, Inc*., No. CV 2019-
0236-KSJM, 2019 WL 7290945, at *4 (Del. Ch. Dec. 18, 2019)). However, the Court will not
draw this negative implication, especially since Juniper and Fortinet are only required to make a
non-frivolous argument that they are third-party beneficiaries under the Intel license. The license
at issue in *Fortis* included the following language:

> No Third-Party Beneficiaries. This Agreement is solely for the ben-
> efit of the Parties . . . and no provision of this Agreement shall be
> deemed to otherwise confer upon any other third parties any remedy,
> Claim, Liability, reimbursement or other right in excess of those ex-
> isting without reference to this Agreement, provided that the Financ-
> ing Sources and their respective successors, legal representatives
> and permitted assigns shall each be a third party beneficiary with
> respect to their respective rights. . . .

*Fortis*, 2019 WL 7290945 at *3. This provision within the *Fortis* license provided strong support
for the conclusion that the contracting parties to that license did not intend that the third party
would benefit from the contract. The Intel license does not contain a similar provision. Other than
arguing about the negative implication provided by calling out third-party beneficiaries explicitly
elsewhere, Implicit provides little additional argument to show how Juniper and Fortinet are not
third-party beneficiaries.

For these reasons, the Court concludes that Juniper and Fortinet have sufficiently established that they constitute intended third-party beneficiaries to the license for the purposes of resolving this Motion.

### ii. As third-party beneficiaries to the Intel License, Juniper and Fortinet are both entitled to assert the forum-selection clause.

The Intel License provides:

> Implicit and Intel agree that all disputes and litigation regarding this Agreement and matters connected with its performance shall be subject to the exclusive jurisdiction of the courts of the State of Delaware, or of the Federal courts sitting therein. Each Party hereby irrevocably submits to the personal jurisdiction of such courts and irrevocably waives objections to such venue.

Dkt. No. 164-2 at § 12.12.[4] The forum selection clause includes broad language, covering "all disputes and litigation regarding [the Intel license] and matters connected with its performance. . . ." *Id*. Little dispute exists that Juniper's and Fortinet's non-frivolous license defenses constitute disputes regarding the Intel License.

Implicit argues that, even if Juniper and Fortinet are considered third-party beneficiaries of the license in general, they still are not third-party beneficiaries of the forum selection clause specifically. Dkt. No. 217 at 1; Dkt. No. 233 at 29:5–11. However, Implicit has not pointed to any case law that supports its position. The only case that Implicit relied on to support its argument was *Uniloc USA, Inc. v. Cisco Sys., Inc.*, No. 6:15-CV-1175-JRG, 2017 WL 959856, at *3–4 (E.D. Tex. Mar. 13, 2017) (Gilstrap, J.). In that case, the Plaintiff argued that the forum selection clause only referred to the parties and that the forum selection clause therefore could not be asserted by the third-party beneficiaries. *Id*. at *3. However, Judge Gilstrap actually rejected the plaintiff's

---

[4] Intel agreed to openly discuss this section of the license in open-court. Dkt. No. 233 at 4:10–20. Because of this and because this section is critical to the resolution of these motions, the Court quotes the language of the section here.

argument and concluded that the defendant had raised a non-frivolous license defense, and he also determined that the forum selection clause was applicable and granted the motion to transfer. *Id.* at \*4. Here, there is no language within the forum selection clause indicating that third-party beneficiaries may not apply the forum selection clause, and the broad language of that license suggests that Juniper and Fortinet may assert the forum selection clause. Accordingly, the Court concludes that Juniper and Fortinet are entitled to assert the forum selection clause as apparent third-party beneficiaries to the Intel License.

### iii.    Juniper and Fortinet have sufficiently shown a non-frivolous nexus between the Intel agreement and the majority of the claims

In addition, Juniper and Fortinet have shown a non-frivolous nexus between the Intel agreement and this case. The Intel license includes language indicating that the covenant not to sue customers applies only to the extent that an allegation of infringement is based at least in part on an Intel product such as their processors. Dkt. No. 164-2 at § 6.2. To the extent that infringement would not exist in the absence of the Intel processors, then the license does not cover the accused product under the terms of the Intel license. *Id.*

Implicit argues that Juniper and Fortinet have failed to show that the Intel processor satisfies one or more of the required claim limitations for most claims. Dkt. No. 175 at 4–7; Dkt. No. 199 at 5–9. Implicit argues that some or all of the accused products contain multiple processors. Dkt. No. 175 at 6; Dkt. No. 199 at 9. Implicit argues that simply because the accused products include an Intel processor does not mean that an Intel processor is actually the processor within the accused products that satisfies the relevant claim limitations. Dkt. No. 175 at 6; Dkt. No. 199 at 9..

However, the Court concludes that Juniper and Fortinet have sufficiently shown that the majority of the accused products in these cases are likely covered by the license. As stated above,

a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous," *Gen. Protecth Grp*, 651 F.3d at 1359. A full resolution of the licensing defense issues should not be made by this Court at this time, and "[i]f this Court were to proceed any further by adjudicating the merits of this dispute by resolving which party has the prevailing argument with respect to the ultimate license defense, then it would exceed its authority at this preliminary stage." *Uniloc*, 2017 WL 959856, at *4.

At the hearing on these Motions, counsel for Defendants indicated that the majority of accused products included Intel processors. Juniper provided a declaration from its Senior Director and Head of Global Direct Sourcing for Juniper Networks, Inc., and this declaration provides that "[a]t least the following Juniper products are Intel-based products that are specifically designed and operated using Intel processors (including for their flow-based packet processing features): the SRX1500, SRX4100, SRX4200, SRX4600, SRX5400, SRX5600, and SRX5800 series appliances, the vSRX Virtual Firewall, and the cSRX Container Firewall." Dkt. No. 164 at 3 (citing Dkt. No. 165-12 at ¶ 3). Fortinet provided a list with the accused products, which showed that approximately 75% of the accused products possessed an Intel processor as the central processing unit. Dkt. No. 185-7. Counsel for Juniper and Fortinet both walked through how Implicit's infringement contentions were directed at functionality provided by the Intel processors. *See also* Dkt. No. 164 at 4–5; Dkt. No. 210 at 2. Juniper's declaration provided that "all of these Juniper products use Intel processors for the accused flow-based packet processing features." Dkt. No. 164 at 3 (citing Dkt. No. 165-12 at ¶ 3). Fortinet shows where Implicit's infringement contentions point to the central processing unit as the example of a processor that satisfied the claim limitations, (Dkt. No. 185 at 5 (citing Dkt. No. 185-10 at F-683)), and Fortinet has shown that the central processing units in approximately 75% of its accused products are Intel processors. Thus, Juniper

and Fortinet have both sufficiently shown that the majority of the accused products in their respective cases utilize an Intel processor.

Both Juniper and Fortinet acknowledge that accused products exist that do not utilize an Intel processor. For example, Implicit argued that the SRX300, SRX320, SRX340, SRX345 and SRX550 processors did not use Intel processors, and Juniper did not dispute this fact. Dkt. No. 175 at 2. For Fortinet, the provided list of accused products showed that approximately 25% of those products did not show an Intel processor as the central processing unit. Dkt. No. 185-7.

Additionally, Implicit argues that some of the asserted patent claims do not require any processor. Implicit argues that it asserts several *Beauregard* claims[5] that do not require a processor, and these claims constitute ten of the fifty-four claims (18.5 percent of the asserted claims). Dkt. No. 175 at 3, 10–12. Other courts have understood *Beauregard* claims to be infringed where "an accused infringer makes, uses, offers to sell, or sells an apparatus containing a computer usable medium that stores computer readable program code that, if executed, will provide the system capable of performing the functional limitations recited in Claim 14." *See Finjan, Inc. v. Blue Coat Sys., Inc*., No. 13-CV-03999-BLF, 2015 WL 3630000, at *13 (N.D. Cal. June 2, 2015). Thus, under this interpretation, infringement does not require that a processor actually execute any code on the computer readable medium; infringement only requires that the code be stored on the computer readable medium and that the accused infringer makes, uses, offers to sell, or sells an apparatus containing a computer usable medium.

---

[5] These claims are also referred to as computer-readable medium claims, but the Court will refer to these claims as *Beauregard* claims. "A *Beauregard* claim—named after *In re Beauregard*; 53 F.3d 1583 (Fed. Cir. 1995)—is a claim to a computer readable medium (e.g., a . . . hard drive. . .) containing program instructions for a computer to perform a particular process." *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1368 (Fed. Cir. 2011).

The claims here appear to take the traditional form of a *Beauregard* claim. *See, e.g*., '683 Patent at Claim 10 ("A non-transitory, computer-readable medium comprising software instructions for processing a message, wherein the software instructions, when executed, cause a computer 5 system to: . . . ."). The Court finds that these claims are analogous to the claims analyzed in *Finjan*. Like the claims in *Finjan*, infringement of the *Beauregard* claims in this case does not require that a processor actually execute any code on the computer readable medium and thus does not necessarily implicate the Intel processors.

Thus, the Court determines (1) that a large portion of this case is covered by the forum selection clause within the Intel license and (2) that a smaller portion of the case is not covered by that forum selection clause. This leads to the next issue: whether the Court should retain the entire case, whether the Court should sever and transfer the covered portions of this case (and retain the portion of the case that is not covered), or whether the Court should simply transfer the entire case.

### b.  Rather than severing some of this case out, all claims related to Juniper and Fortinet should be transferred to the District of Delaware.

Severance would not be appropriate in this case. Because Plaintiff cannot clearly identify the accused products that possess the Intel processors and the claims that implicate them, there is no practical way to cleanly sever the case.  Furthermore, Implicit's proposal would have the same patents asserted against each Defendant in two different forums, which would require this Court and the District of Delaware to construe the exact same claim limitations. Both Courts would likely address the same infringement issues with small variations based on the differences in the accused products, making any Motions for Summary Judgment and issues on infringement at trial largely similar. Implicit's proposed severance would create a significant risk of conflicting rulings between these two Courts. *See Texas v. U.S. E.P.A*., No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (showing where the Fifth Circuit relied upon the risk of conflicting rulings in

determining a Motion to Transfer).  And because such an overlap would exist between the issues to be resolved, the proposal would also create a significant amount of inefficiency as two courts would be unnecessarily required to resolve these issues for each Defendant. Additionally, the *In re Rolls Royce* case involved a situation where a forum selection clause applied for some parties but not others. Here, Implicit seeks to sever this case based on the asserted patent claims and based on the accused products. This will create even greater inefficiencies than in the *In re Rolls Royce* case.

Even though the facts here are even less favorable than the facts presented in *In re Rolls Royce*, Implicit requests that the Court take the approach of the district court in the *In re Rolls Royce* case. Because the Fifth Circuit actually granted a writ of mandamus in the *In re Rolls Royce* case, the Court declines Implicit's request.

Plaintiff has not satisfied its burden of showing that transfer is unwarranted under the factors. *Atl. Marine*, 571 U.S. at 63. For the public interest factors, the administrative difficulties flowing from court congestion weighs against transfer, but the remaining public interest factors are all essentially neutral.

With respect to portions of the case covered by the forum selection clause, each of the private interest factors must be construed to weigh in favor of transfer to the pre-selected forum. *Id*. at 64. Because the majority of the Juniper and Fortinet cases are covered by the forum selection clause, the transfer factors weigh strongly in favor of a transfer when they are adjusted to account for the forum-selection clauses.

With respect to portions of the case that may not be covered by the forum selection clause, there has been little showing that a trial in Marshall would be more convenient under the private interest factors. The Fifth Circuit has stated that courts must consider the private factors for parties

that are not covered by a forum selection clause when a forum selection clause applies to some parties but not to others. *In re Rolls Royce,* 775 F.3d at 681. However, here the party opposing transfer was a party to the forum selection clause.

The Court concludes that Imperva has a limited impact on the transfer analysis. Implicit's case against Imperva was consolidated with Implicit's cases against Juniper and Fortinet only for the purposes of conducting pre-trial proceedings. Imperva did not join in the transfer motion practice and has only recently filed a Motion to Transfer (Dkt. No. 231), and the Court will reserve judgment on the merits of that Motion to Transfer, which will be addressed in a subsequent order.

## III. CONCLUSION

The Court therefore **GRANTS** Juniper's Motion (Dkt. No. 164) and Fortinet's Motion (Dkt. No. 185). It is therefore **ORDERED** that all claims against Juniper and Fortinet shall be transferred to the District of Delaware. This Order does not apply to the suit against Defendant Imperva, Inc.

The Clerk is directed to de-consolidate the action against Juniper Networks, Inc. (2:19-cv-0037) and the action against Fortinet, Inc. (2:19-cv-0039) from the lead case (2:19-cv-0040) and transfer only the former two actions.

**SIGNED this 22nd day of April, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on May 22, 2020.

I certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

A copy of the foregoing was served upon the district court judge via UPS:

Hon. Robert W. Schroeder, III
United States District Court for the Eastern District of Texas
500 North State Line Avenue, Third Floor
Texarkana, TX 75501
Telephone: (903) 794-4067

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*